and it is docket 256032. Council, we're ready for your argument. Good morning, Your Honor. Good morning. Sam Ballingood for Appellant John Miguel Swan. I'm going to endeavor to save two minutes of time for rebuttal. Your Honor, Mr. Swan is today halfway through a 10-year sentence which was imposed because he exercised his constitutional right to possess ammunition. Yet no court has seriously asked whether that sentence violates those rights. This case is not governed by this court's precedence in Vincent and McCain. Those cases concern firearms. Mr. Swan presents a legally and factually distinct question from what was before the court were decided in those cases. Applying the modern Second Amendment framework today, the government has failed in two basic ways to meet its burden to justify the sentence. First, the government has failed to do what this court in Harrison recognized that it must. To the extent that a modern disarmament law is based upon a legislative judgment about dangerousness, that judgment must be substantiated. Failing to apply this step leaves the Second Amendment subject only to rational basis review. A result we know cannot be corrected has been squarely rejected by the Supreme Court and this court. Second, the government has failed more broadly to establish a relevant historical practice of disarming felons like Mr. Swan. There is no doubt that the historical record shows there were individuals who are similarly situated to Mr. Swan, former felons at the time of the founding, and yet the government offers no analogous historical understanding of the Second Amendment at that time to meet its step two burden under Bruin. Let me ask you this. Is your argument foreclosed by law of the case? No, Judge McHugh, I would not say it is. I believe Your Honor is referring to? The footnote. Yes. Footnote 7. No, I would not say so, Your Honor. First off, law of the case cannot come from dicta, and I would say that that statement is dicta. The court said it was not going to be reaching that issue. Certainly, the footnote indicates no analysis or engagement with the issue in substance. It is not unusual, I would say, for a court to decide a case on a narrower basis than it might have decided it, but the fact that the court noted that in footnote 7 I don't think would rise to the level of being precedent, and what I would say as well is that I don't believe that's a position that the government has previously taken. This case has not been cited as precedent in any other firearms case. So, for example— Well, if we were to read the footnote differently than you do and to say that it's not dicta, would you agree that law of the case would foreclose your argument? If it's not dicta, Your Honor, I still don't know how to interpret the scope of that holding. If that does rise to the level of precedent, what the court said in that case was solely an outcome basis. We note that this would be foreclosed. There was no engagement with the analysis or argument. Well, what it said was that we've already decided this in Vincent and you can't prevail. Well, what the court decided in Vincent was a question about firearms. Well, I'm not asking you whether that footnote is correct. I'm asking you if it's not dicta, does it foreclose your argument here? Well, the way the parties presented the argument in Swan 1 did not draw the same distinction on firearms versus ammunition that Mr. Swan draws today. And so to the extent we are interpreting that footnote and its application in Vincent, I think it would be over-reading it to apply it in that circumstance. Is there authority out there that distinguishes between firearm and ammunition? Certainly, Your Honor. I think, first off, the simplest and best evidence of it is the fact that Congress treated them separately. By presenting them in this disjunctive, and, of course, the executive routinely charges ammunition-only cases here. So they are two distinct things presented disjunctively in the statute. I think that when you get to the Bruin Step 2 inquiry, that is a contextual question based upon the historical record and based upon the fact of how Congress previously at the founding approached this regulatory issue. And to the extent that it did, as we have laid forth in our briefs, it did conceive of these things as two separate objects of regulation. Are there any cases that analyze it that way and say, sure, we thought this for firearms, but no, it's different for ammunition? I am not aware of any case that would have drawn a relevant legal distinction in the manner I think Your Honor is suggesting right now. And that you're asking for, right? Yes, Your Honor. Under Bruin Step 1, it's got to be an arm in common use for self-defense. Your client cannot have a gun. So you're talking about ammunition only. I mean, that's no different than having a pebble to throw at someone. Doesn't have a firearm to make it a lethal weapon. What do you have to tell us that bullets alone, ammunition alone, is an arm for purposes of the Bruin Step 1 analysis? A couple thoughts on that, Your Honor. First off, what I would say is that to the extent we are talking about the Bruin analysis and the word arm in there, I think I would caution against over-reading that term in the Bruin Step 2 analysis. Step 1. I'm sorry, Step 1 analysis. The Supreme Court has often said that its opinions are not to be read with the precision that one would say statutes. I think the relevant inquiry is whether or not ammunition would be protected under the Second Amendment. Well, on the question of whether it's the second prong of the first step is whether it's an arm in common use for self-defense. And here you have a situation where we're talking about ammunition to be possessed by someone who cannot lawfully possess a firearm. So you're just looking at ammunition. I mean, you know, do we have anything to suggest that it's commonly used for home defense? People throw bullets at an intruder? As you were trying to say now about that, I don't. Well, the ammunition is no good without a gun, right? Well, Your Honor, to take a step back for a moment, if we were to say that because Mr. Swann cannot have a gun, therefore he cannot have ammunition, that would either be an expansion of Vincent and McCain beyond what those cases say. No, what I'm saying is because he can't have a gun, ammunition is not an arm. Ammunition alone is not an arm in common use for self-defense. That's what I'm saying. Well, I don't think the character of ammunition would change based upon the individual possessing it, Your Honor, for the constitutional analysis. I think that ammunition is protected under the Second Amendment. As a broad statement of fact, ammunition is protected under the Second Amendment. It is a necessary concomitant to the Second Amendment. But if you cannot have a firearm, I'm not sure that the opposite is true. Well, with respect, Your Honor, I think that this is a difficult question because most constitutional rights are not physical objects that interrelate with one another in this fashion. But it is often true that Congress permissibly limits or derogates certain constitutional rights, and it does so based upon whatever the standard of review might be. But to say that Congress has permissibly done X does not imply anything further about further derogation of rights. Many constitutional rights imply corresponding rights, the right to receive information, for example, as the right to speak, the right to not speak, the right to speak. The fact that Congress can limit one of those doesn't imply any derogation of any implied other right. Unless, of course, one piece of it is completely useless without the other piece of it, and you don't challenge the prohibition on the gun. Well, I don't think it would be completely useless, Your Honor. Ammunition is... What are you going to do with it? You've got ammunition. Somebody's breaking into your house. You do not have and are not allowed to have a gun. How is it commonly used for self-defense? Well, I don't think that what the Court is saying in common use for self-defense implies that your constitutional right is restricted to the actual uses for self-defense. Hunting would be a great example. One can hunt. It's not a use for self-defense. Can one really throw the ammunition at a deer? Well, Your Honor, there are many ways in which one can use ammunition apart from use for self-defense. One can... That's not the question. Are there ways that you can use the ammunition without a gun is the question. Well, Your Honor, I would... What I would say is that the Bruin Step 2 analysis, the Bruin analysis... I'm in Bruin 1. I'm sorry. I keep getting that tripped up. ...is not solely dependent on a particular use. The question is whether the object is in use for self-defense, for hunting, target shooting, any one of these other objects. Ammunition can only be used in a firearm. That is true. But one can purchase ammunition for a friend. One can use it for other purposes. One can sell it. One can engage in other things that would be constitutionally protected and would be subject to the Bruin analysis that is not the actual act of self-defense. But more broadly, so Harrison teaches that to the extent that the dispossession, a modern dispossession statute is based upon a legislative judgment about dangerousness, that has to be substantiated. That is what prevents the Second Amendment from falling to the subject-only rational basis review. And I think that the government here acknowledges this burden in its answering brief, but it does not attempt to meet it. It invokes the historical tradition of regulating dangerous parties and regulating that use, but does not engage with what that actually would require in this case, which is a reason to believe that that legislative judgment is accurate, more than rational basis review. One other thing I would note as well, at the step two analysis more broadly, the government has not pointed to any relevant historical understanding or tradition of disarmament. At the founding, as I mentioned, there were obviously felons like Mr. Swan, who had reintegrated back into society, and the government does not establish that there were any dispossession statutes, firearms or ammunition relevant at that time. And I would direct the court in this respect to footnote 10 from the Duque Ramirez case from this past December. The historical record is a matter of party representation and party advocacy. The court is entitled to rule on the record which has been presented to it. In this case, the government has not pointed to any historical history or tradition of regulation that would support the restriction as applied to Mr. Swan. If the court has no further questions, I would reserve the balance of my time for rebuttal. Very well. Well, before you go, don't you have a second issue? Yes, Your Honor, as well. In the sentencing here, the court gave a maximum level sentence for the imposition, a statutory maximum sentence for conduct which it recognized was minimally culpable. Possessing 17 bullets is, as you might expect, perhaps the least culpable way of violating the statute. And nonetheless gave a statutory maximum sentence. It did so because it ignored the potential for disparate sentences, as Mr. Swan raised at sentencing, and by focusing on punishing Mr. Swan for conduct other than the conduct of the offense. For what it perceived as Mr. Swan's history of domestic violence, those are very serious allegations, and those are very serious allegations I am not downplaying, but they are unrelated to the act of possessing ammunition in this particular case. And combining those two would make that sentence substantially unreasonable. Thank you. Thank you. May it please the Court, Stephen Craig on behalf of the United States. I'm going to start with the Second Amendment issue since that is where the court spent most of its time. I would submit there are two analytical paths that this court could take to affirm. I think the proper path to take, and it's a path that's inherent even in the attempt that Mr. Swan attempts to make to distinguish it, distinguish ammunition, that ammunition is ultimately necessary for the operation of a firearm. It's encompassed within the use of a firearm, and as a result, it should be viewed part and parcel with a firearm. Viewed in that way, Vincent B. Bondi covers this case, and as this court explained in Swan 1. So the first analytical path is simply to say ammunition is entitled to no greater protection than the firearm itself. Vincent controls, end of story. The second analytical path is the path that Mr. Swan has asked this court to take, which is to treat ammunition alone as constitutionally different than a firearm. This runs into a number of problems, not the least of which, as Judge McHugh's questions I think narrowed the issue, the burden is on the defendant to demonstrate that ammunition alone, without reference to a firearm, because that's the distinction he chose to make and stand on, is an arm protected by the Second Amendment. And as the Supreme Court explained in Heller, it defined the term arm as a weapon of offense. As this court explained in Rocky Mountain Gun Owners, it's the challenger's burden, in this instance Mr. Swan's burden, at Bruins Step 1, to show that it is an arm. Mr. Swan has failed in that burden. Specifically, I point the court to page 15 of Mr. Swan's corrected opening brief, where he admits, quote, ammunition is, on its own, hardly dangerous at all. One cannot use ammunition in an offensive manner without a firearm. I would submit that right there demonstrates Mr. Swan has failed in his burden at Bruins Step 1, and there is no reason that this court needs to go to Bruins Step 2. So counsel, I'm sorry, what about footnote 7? You're not going with the law of the case? Or is that path number 1? I think that is a sub-path for path number 1. So I think you could say Vincent controls, end of story. I think you could also say that footnote 7 of Swan 1, which incorporates Vincent v. Garland, also controls. So whether you say law of the case or prior precedent based on Vincent, I think both of those are the same analytical road. Okay. Thank you. No problem. The only other thing that I want to touch on with regard to the second analytical road is Mr. Swan's counsel argued that ammunition alone could be used for things like purchasing for a friend or trading or economic purposes like that, which are not Second Amendment purposes. They're not being used for self-defense or hunting for things that you would use an arm for. They'd be goods and commodities in that instance. And so I would submit that doesn't carry the burden either. Unless the court has any further questions regarding the Second Amendment issue, I'll briefly touch on the substantive reasonableness of the sentence. Mr. Swan's major argument has been that the district court didn't adequately address the need to avoid unwarranted sentencing disparities. This is incorrect for a number of reasons. First, the district court explicitly said that it considered all of the 3553A factors. That's at page 348 and then again at page 351 of Volume 5 of the Record on Appeal. The district court also properly calculated the guideline range. And as the Supreme Court explained in Gall, which was a variance case, when a district court properly calculates the guideline range, it necessarily gives weight and great weight. It necessarily gives great weight to the need to avoid unwarranted sentencing disparities. At the end of the day, the need to avoid unwarranted sentencing disparities is but one factor for the court to consider. And it's entitled to give it as much or as little weight as it needs, at least as reasonable. Here, the district court explained that Mr. Swan's history and characteristics, specifically his eye-catching brutality against women going back many years, was one of the big things that drove the sentence. Another thing being that he was told countless times that he can't possess firearms and ammunition, yet continued to do so. I think it's also notable that Mr. Swan received a 100-month sentence in federal court for being a felon in possession of a firearm just a few years before this incident took place. In fact, he was off supervised release for that incident for less than a year before he possessed ammunition in this case. As a result, the district court gave a sufficient explanation as to why it imposed the variant sentence that it did. And Mr. Swan has failed to show that that sentence is an abuse of discretion. Unless the court has any further questions. Was the maximum sentence then 10 years or 15? It was 10 years, Your Honor. It was before the Bipartisan Safety Restricts Act. Unless the court has any further questions, I would ask that you affirm the judgment and sentence below. Thank you. Thank you, Mr. Krieger. Thank you, Your Honor. So, because ammunition is required to make this primary right of exercising firearms, make firearms effective in practice, the Second Amendment must reach and protect the use of ammunition. It does so both directly, because it is necessary to make the right to bear arms effective, independent of being arms. It is required to make it bear arms effective. And secondly, derivatively of that, the right to keep it, to make firearms effective in the right of self-defense. So, to say that the Second Amendment reaches ammunition must mean that Mr. Swan's conduct here was constitutionally protected in some way. It would be an expansion of Vincent and McCain to expand those cases to this case here today. I would say that there is nothing in those cases which took Heller's dicta on casting doubt on the prohibition of firearms. There would be no analysis or reason to expand those logic, those cases here today, to the extent the court proceeds from first principles under the Second Amendment. The result would be, as you say, in the answer brief. I would touch on the Gall question as well. Counsel pointed out that Gall states that to calculate the sentence, there is a given weight to the need to avoid sentencing disparities. What this court has said in other cases is that a within-guideline sentence that has been properly calculated is entitled to a presumption of substantive reasonableness. This is a major variance. Mr. Swan did not get a guideline sentence. Mr. Swan got something significantly in excess of his guideline sentence. To what extent Gall implies a consideration of this factor in the calculation of the sentence, that cannot be enough to overcome the absent analysis here today. Unless the court has any further questions, I will give you time. Thank you. Thank you, counsel. The case is submitted and counsel is excused.